613 N.W.2d 297 (2000)
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
Joseph Edmund PUERTAS, Defendant-Appellee.
Docket No. 116333, COA No. 224173.
Supreme Court of Michigan.
June 20, 2000.
*298 On order of the Court, the motion for immediate consideration is considered, and it is GRANTED. The motion for reconsideration of this Court's order of March 3, 2000, is treated as a motion for clarification and is also considered, and it is DENIED as moot.
Although we deny the prosecutor's request for further clarification as moot, we offer the following statement because we disagree that the United States District Court for the Eastern District of Michigan has what is effectively appellate jurisdiction over orders issued by this Court. We believe this Court's previous order is constitutionally adequate. Further, we submit that this Court's ability to issue peremptory orders resolving state court appeals is essential to the efficient and practical administration of justice in this state.
In addition, we offer the following statement because we believe that the issues involved are substantial ones in defining the relationship between the federal and state sovereigns, and because, when this *299 situation inevitably repeats itselfa repetition made all the more certain by the district court's decision in the instant casethe federal judiciary will have had the opportunity to consider this Court's understanding of the relationship between the federal and state courts in the context of bond pending appeal. In our judgment, the district court erred in its exercise of authority in the instant case, impinging upon the traditional criminal jurisdiction of this state.
The position of the concurrence that this statement is moot or otherwise "inappropriately rendered" is, of course, equivalent to the position that this Court should merely acquiesce in the district court's exercise of authority in this matter. For, under the formulations of the concurrence, it will perpetually be the case that this Court's response to the usurpation of state authority will be moot and "inappropriately rendered." If and when the district court, next week or next month or next year, again releases a convicted felon back to the streets in contravention of this Court's determinations, there will, of course, be no opportunity for our response. And, if serendipitously, there is, as in the instant case, a motion for clarification by the prosecutor, this Court will once again be chastised by our colleague that to set forth a constitutional defense of this Court's exercise of authority is "unnecessary," "compuls[ive]," "highly unusual," "unwarranted," and "surplusage." Apparently, the concurrence would limit the interaction between the federal and state judiciaries to a one-way street in which the federal judiciary is entitled to opine to whatever extent it chooses about constitutional matters impacting upon this relationship, while the state judiciary is forever denied the opportunity to respond. This is a prescription for the continual enhancement of the federal judiciary at the expense of the state judiciary. While even the concurring justice recognizes that dicta "may serve a judicial function," he is apparently unpersuaded that constitutional analysis by this Court, designed to deter what we view as a serious encroachment upon Michigan's judicial authority, rises to the level of such a function.[1]

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.
In 1981, defendant was convicted of delivering 225-650 grams of cocaine, M.C.L. § 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii), and of conspiracy to deliver 225-650 grams of cocaine, M.C.L. § 750.157a; MSA 28.354(1). Although initially sentenced to concurrent terms of 20-30 years for each conviction, the mandatory sentence required by statute, defendant gained parole after approximately five years imprisonment.
In November 1999, defendant was again convicted of serious drug offenses. After a jury trial, defendant was convicted on six counts of delivering less than 50 grams of cocaine (second offense), M.C.L. § 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), one count of conspiracy to deliver 50-224 grams of cocaine (second offense), M.C.L. § 750.157a; MSA 28.354(1), and one count of racketeering, M.C.L. § 750.159g(c); MSA 28.356g(c). The trial court sentenced defendant to six consecutive terms of 2-40 years each for the delivery convictions and one consecutive *300 term of 2-20 years for the racketeering conviction.[2]
At sentencing, defendant orally moved the trial court for bond pending appeal. The trial court denied that motion. Defendant appealed his convictions in the Court of Appeals and filed an emergency motion requesting that the Court of Appeals grant his motion for bond pending appeal. A divided Court of Appeals panel granted defendant bond.[3] As a result, defendant was released from jail.
The prosecutor filed an emergency application for leave to appeal with this Court, requesting review of the Court of Appeals decision to grant defendant's motion for bond. By order dated February 9, 2000, this Court vacated the Court of Appeals order and remanded for reconsideration. 461 Mich. 959 (2000). The next day, the Court of Appeals issued a second divided decision, which again granted defendant's motion for bond.[4]
The prosecutor filed a second emergency application for leave to appeal with this Court. By order dated March 3, 2000, this Court vacated the second Court of Appeals decision and denied defendant's motion for bond. 461 Mich. 966 (2000). That order directed defendant to submit himself to the custody of state law enforcement officials.
That same afternoon, March 3, 2000, defendant filed a petition in the United States District Court for the Eastern District of Michigan, requesting that the district court prevent enforcement of this Court's order. Defendant also filed an "Emergency Ex Parte Request for Continuation of Bond Pending Hearing." District Judge Denise Page Hood entertained that emergency motion on Friday, March 3, 2000, and granted the motion on Saturday, March 4, 2000.[5] On March 10, 2000, District Judge Paul V. Gadola extended the emergency order and continued defendant's bond.
On March 29, 2000, Judge Gadola entered a preliminary injunction prohibiting Michigan authorities from enforcing this Court's March 3, 2000, order. Puertas v. Michigan Dep't of Corrections, 88 F. Supp. 2d 775 (E.D.Mich., 2000). The district court invited this Court to clarify the reasoning behind its order of March 3, 2000, denying defendant's motion for bond pending appeal:
If the Michigan Supreme Court were to issue an order tomorrow that vacates its prior ruling, denies Petitioner bond with reasons, and orders him to turn himself in, and if that order were consistent with federal due process requirements, then the issue before this Court would be moot and this Court could not and would not prevent Petitioner from being remanded to jail.... Even if this Court eventually were to rule favorably on Petitioner's application for a writ of habeas corpus, it may do so conditionally by ordering that the Court will grant a writ of habeas corpus within a specific number of days if the Michigan Supreme Court does not either grant bond pending appeal or deny bond pending appeal with a statement of reasons that are not arbitrary or constitutionally unreasonable and thereby satisfy federal due process requirements. [88 F. Supp. 2d at 778-779.]
During the above federal court proceedings, the prosecutor filed the instant motion for reconsideration with this Court. While the motion remained under consideration, the circuit court set aside defendant's convictions and granted his motion *301 for new trial, by order dated May 8, 2000.[6] The circuit court also "reinstated" defendant's bond.[7] Because the defendant's underlying conviction has recently been vacated by the circuit court, we deem the instant motion to be moot.
Nevertheless, we feel compelled to provide this statement in response to the action of the United States District Court for the Eastern District of Michigan. The district court's decision to intervene and assume effective jurisdiction over this state matter prevented enforcement of this Court's interpretation of Michigan law. The district court's order also allowed defendant to avoid incarceration, even though he was convicted of serious drug offenses under state law and was initially denied bond pending appeal by the court which presided over his trial. When he filed his motion for bond with the Court of Appeals, defendant no longer enjoyed the presumption of innocence accorded a pretrial detainee.
The decision of the district court, if allowed to stand as precedent, will likely encourage an increasing number of defendants convicted in the courts of this state to file interlocutory petitions with the federal courts for injunctive relief, in an attempt to avoid incarceration for crimes for which they stand convicted. We believe that the action of the district court was an inappropriate extension of federal jurisdiction and an unwarranted usurpation of this Court's jurisdiction over criminal prosecutions brought under Michigan law.

II. THE UNITED STATES DISTRICT COURT LACKS APPELLATE JURISDICTION OVER THE MICHIGAN SUPREME COURT.

A. SUBSTANTIVE REVIEW OVER A STATE COURT'S EXERCISE OF DISCRETION.
It is clear to the members of this Court that the United States District Court for the Eastern District of Michigan lacks appellate jurisdiction over the orders and decisions issued by this Court. A direct appeal from a decision of this Court is made by application for certiorari to the United States Supreme Court, not by petition to one of the United States District Courts. 28 U.S.C. § 1257(a). Under principles of comity and federalism, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief. Younger v. Harris, 401 U.S. 37, 43-54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).The district court's effective assumption of jurisdiction over defendant's request for an appeal bond in this case is without apparent precedent.[8]
As clearly recognized by the United States Court of Appeals for the Sixth Circuit:
The United States District Courts do not, of course, sit as appellate courts to review the use or abuse of discretion of the state courts of Michigan in granting or withholding bail pending final appeal.[Bloss v. Michigan, 421 F.2d 903, 906 (C.A.6, 1970).]
*302 By granting defendant's "Emergency Ex Parte Request for Continuation of Bond Pending Hearing," the district court apparently accepted the premise that defendant was entitled to appeal bond under state law. The district court's opinion and order can only logically be interpreted to mean that the district court finds the opinion of the Michigan Court of Appealswhich the district court characterized as a "reasoned decision"more persuasive than the opinion of the Michigan Supreme Court. The district court rejected the decision of the state trial court and the order signed by a majority of this Court, which concluded that the defendant did not satisfy the criteria for release on an appeal bond. Clearly, the district court's decision presumes the authority to substantively review decisions of this Court regarding motions for bond pending appeal.
The district court's order also implies that the district court believes this Court abused its discretion in reversing the Court of Appeals.[9] The Sixth Circuit has clearly recognized that the district courts do not enjoy the power of appellate review over this Court's decisions granting or denying appeal bond.[10] The district court ignored this principle, in order to express its preference for the decision of the intermediate state appellate court. The district court focused on whether this Court's March 3, 2000, order adequately explained the reasoning behind the decision to deny defendant's motion for appeal bond. In effect, the district court held that it was prevented from reviewing the merits of the defendant's motion for appeal bond on the record presented to it. However, it is clear that the district court has no authority to engage in such a review in the first place.[11]

*303 B. IMPLICATIONS OF PEREMPTORY ORDERS.
The February 10, 2000 decision of the Court of Appeals granting defendant appeal bond purported to consider whether defendant had carried his burden of proof under People v. Giacalone, 16 Mich.App. 352, 355-357, 167 N.W.2d 871 (1969). While we express no opinion about the first, second, or fourth Giacalone factors, we believe it is clear that the analysis employed by the Court of Appeals on the third factor was insufficient and erroneous. The Court of Appeals simply stated: "we are not so convinced that defendant's appeal is clearly without arguable merit."[12] The Court of Appeals did not explain or elaborate which issues raised by defendant in his substantive appeal had arguable legal merit. A majority of this Court was convinced that neither the defendant nor the Court of Appeals adequately explained how the defendant had satisfied his burden of proof on this issue. The import of our March 3, 2000, order, which the district court failed to appreciate, was that the defendant in this case failed to carry his burden of proof in the lower courts, and thereby failed to demonstrate that he was deserving of bond.
We believe that peremptory orders sometimes issued by this Court must and do convey that this Court has fully considered the arguments presented by the parties. Considering the thousands of applications for leave to appeal and petitions for other forms of relief filed with this Court on a yearly basis, the ability to sometimes issue peremptory orders resolving a party's claims is essential to the efficient and practical administration of justice in this state. Logically, a peremptory order vacating a grant of appeal bond to a defendant must convey, at the very least, that this Court believes the defendant failed to carry his burden of proof in the lower courts.

III. HABEAS CORPUS PRINCIPLES DO NOT SUPPORT THE DISTRICT COURT'S DECISION.
Assuming that the district court did properly entertain defendant's petition under federal statutes pertaining to writs of habeas corpus, rather than improperly attempting to exercise appellate authority over the Michigan courts, a brief review of habeas corpus principles strengthens our conclusion that the district court acted improperly in this case.
Federal statutes governing writs of habeas corpus make clear that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(emphasis added). Further, a district court may not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(b)(1)(A). We believe that the district court incorrectly concluded that defendant was being held in violation of his constitutional due process rights and incorrectly concluded that defendant had exhausted his state remedies.

A. DEFENDANT WAS ACCORDED DUE PROCESS OF LAW.
First, it is clear to this Court that the defendant in this case was not being held in this state's custody in violation of the United States Constitution. The district court concluded that defendant acquired a fundamental liberty interest once he was released on bond, pending the completion of his substantive appeal in the state courts. To support that conclusion, the district court relied on Atkins v. Michigan, 644 F.2d 543 (C.A.6, 1981), cert. den. 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975 (1981), and Love v. Ficano, 19 F.Supp. 2d 754 (E.D.Mich., 1998), two cases dealing with an accused's right to bail pending *304 trial. The district court extended the holdings of Atkins and Love to the postconviction setting, but ignored other Sixth Circuit precedent dealing with requests for an appeal bond in a postconviction setting.
For example, we believe that Bloss, 421 F.2d 903, is clearly relevant to defendant's petition for a writ of habeas corpus. In that case, the defendant was convicted of violating Michigan law prohibiting the sale of obscene literature. Although the defendant had enjoyed pretrial bond, the trial court denied the defendant's motion for bond pending appeal of his conviction. The Court of Appeals and this Court likewise denied defendant's repeated requests for bond pending appeal. The United States District Court for the Western District of Michigan nevertheless granted defendant's petition for a writ of habeas corpus and ordered the defendant's release from Michigan custody. On appeal, the Sixth Circuit reversed the district court, concluding that the defendant had no fundamental liberty interest in obtaining a postconviction bond, and that his due process rights had not been violated. Bloss considered the application of habeas corpus principles to a defendant's application for appeal bond in a postconviction setting, whereas Atkins and Love considered pretrial detainees.[13]
Further, in an unpublished opinion following Bloss, the Sixth Circuit concluded that a defendant "simply has no federal constitutional right to bail pending appeal." Dennany v. Abramajtys, 37 F.3d 1498, 1994 WL 545323, *1 (C.A.6, 1994). In Dennany, the defendant had been duly convicted of a criminal offense by the Michigan courts. The state courts granted the defendant a new trial, but denied his motions for bond pending retrial. The Sixth Circuit held that the defendant had no federal constitutional right to bond pending appeal, and further held that the petition for a writ of habeas corpus was properly dismissed because it "did not raise a federal constitutional claim...."[14]Id. While neither Bloss nor Dennany involved a defendant whose motion for appeal bond had been granted by a state court, we believe these two cases are relevant to the district court's resolution of the issues presented in this case.
The district court nevertheless recognized federal precedent for the principle that, once a state has made provision for bond pending appeal, the arbitrary denial of such bond violates the due process protections contained in the Fourteenth Amendment of the United States Constitution. United States ex rel. Walker v. Twomey, 484 F.2d 874 (C.A.7, 1973); King v. Zimmerman, 632 F.Supp. 271 (E.D.Pa., 1986); Abbott v. Laurie, 422 F.Supp. 976 (D.R.I., 1976). Assuming, without deciding, that defendant did acquire a fundamental liberty interest once he was released on appeal bond by the Court of Appeals, we believe that our March 3, 2000, order conveyed that this Court fully considered the merits of the appeal bond issue. Further, we believe that due process principles did not require this Court to provide the federal district court with a more extensive rationale supporting that decision, in order to facilitate the district *305 court's desire to conduct a substantive review.

B. DEFENDANT FAILED TO EXHAUST HIS STATE REMEDIES.
Second, it is clear to this Court that the defendant did not exhaust his state remedies, a prerequisite to filing a federal petition for a writ of habeas corpus. Defendant never requested state court review of his claim that this Court's March 3, 2000, order violated his constitutional rights to due process. Therefore, the courts of this state have never been presented with an opportunity to consider and rule on that issue.
In Picard v. Connor, 404 U.S. 270, 275-276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), the United States Supreme Court held that a state prisoner seeking federal habeas corpus relief must present to the state courts the same claim that he urges upon the federal courts, in order to exhaust his state remedies. In Picard, the defendant was convicted of murder in state court. During the course of state court proceedings, the defendant never argued that the state had denied his constitutional rights to equal protection. He raised that claim for the first time before the federal courts in a petition for a writ of habeas corpus. The United States Supreme Court granted certiorari and reversed the grant of habeas corpus, holding that the defendant had not exhausted his state remedies:
We emphasize that the federal claim must be fairly presented to the state courts. If the exhaustion doctrine is to prevent "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,"... it is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. [Emphasis added.]
With regard to the instant case, defendant Puertas did not request a Michigan court to review whether his constitutional right to due process was violated by this Court's March 3, 2000, order denying his request for appeal bond, even though Michigan law provides defendant with the opportunity to file an action for habeas corpus. MCL 600.4301 et seq., M.S.A. § 27A.4301 et seq. Therefore, under the rule of Picard, defendant is not able to raise a due process claim in a federal court action for habeas corpus because he did not exhaust his state remedies.[15]
Further, when defendant filed his petition for a writ of habeas corpus, he had not exhausted his state remedies as described by Sixth Circuit precedent, because his substantive appeal remained pending before the Michigan Court of Appeals. Bloss, 421 F.2d 903. In Bloss, the defendant's motion for bond pending appeal of his state conviction had been heard by the Michigan trial court, the Court of Appeals, and this Court. The defendant had clearly acquired a final decision from the courts of this state on his request for an appeal bond. However, his substantive appeal *306 challenging his criminal convictions remained pending in the state courts. Considering these facts, the Sixth Circuit held that the defendant had not exhausted his state remedies, and concluded that habeas corpus proceedings in the district court were inappropriate.[16] In the instant case, defendant's substantive appeal remained pending in the courts of this state at the time he filed his petition for a writ of habeas corpus. Therefore, under Bloss, he did not exhaust his state remedies and was not entitled to petition the district court for a writ of habeas corpus under 28 U.S.C. § 2254.[17]
Because defendant did not exhaust his state remedies, as required by federal statute and Sixth Circuit precedent, we believe that the district court inappropriately entertained defendant's petition for a writ of habeas corpus.

IV. CONCLUSION
The members of this Court consider the district court's attempt to assume jurisdiction over defendant's state court motion for appeal bond an improper assertion of authority over matters conferred by "We, the people of the State of Michigan," to the Supreme Court of Michigan. Const. 1963, Preamble; Const. 1963, Art. 6, § 1. With all due respect, the district court lacks the authority to review this Court's exercise of discretion over granting or denying an appeal bond to a state prisoner, and lacks the authority to reinstate the vacated holding of an intermediate state appellate court. This Court's March 3, 2000, order necessarily conveyed the majority's conclusion that the defendant failed to carry his burden of proof before the Court of Appeals, and thereby failed to demonstrate that he was deserving of bond. We respectfully disagree with the district court's attempt to exercise what would effectively be appellate review over this Court's decision. We therefore decline to follow the district court's invitation to supplement this Court's March 3, 2000, order.
Even assuming that the district court properly considered defendant's petition for a writ of habeas corpus, our review of the United States Constitution persuades us that defendant was not being held in this state's custody in violation of the United States Constitution. To the extent that defendant acquired a fundamental liberty interest once he was released by the Court of Appeals, we believe that this Court's previous order accorded defendant the full protections of the Fourteenth Amendment. Further, we conclude that defendant failed to exhaust his state remedies. This inquiry strengthens our conclusion that the district court erroneously considered defendant's petition for writ of habeas corpus and improperly attempted to overturn this Court's authority to adjudicate issues arising in state criminal prosecutions. The motion for clarification is DENIED.
WEAVER, C.J., states as follows:
I write separately to say that I concur only in the Court's decision to grant immediate consideration and to deny the prosecutor's motion as moot.
MICHAEL F. CAVANAGH, J., states as follows:
I concur with the decision to grant immediate consideration and the decision to deny as moot the motion for reconsideration of this Court's order of March 23, 2000. I do not, however, join the remainder of the order, because I do not share the majority's compulsion to "provide [a] statement in response to the action of the United States District Court for the Eastern District of Michigan." In this case, the trial court has now granted a new trial and bond. Interestingly, while the prosecutor, *307 in the Court of Appeals, is currently appealing the new trial ruling, I am advised no appeal has been taken from the granting of bond. Thus, the statement offered is dicta, unnecessarily and inappropriately rendered in a moot case.
"Dicta" is an opinion "which do[es] not embody the resolution or determination of the specific case before the court." Black's Law Dictionary (6th ed.), p. 454; see also Cree Coaches, Inc. v. Panel Suppliers, Inc., 384 Mich. 646, 649, 186 N.W.2d 335 (1971); McAuley v. General Motors Corp., 457 Mich. 513, 526, n. 1, 578 N.W.2d 282 (1998) (Taylor, J, concurring in the result). Dicta is normally reserved to express the views of an individual author on matters that go beyond the facts of a particular case. Id. The extensive dicta offered today, on the other hand, is being issued by the Court, and it disproportionately exceeds the two-sentence substantive order. Although dicta may serve a judicial function, the form and substance of the statement offered in conjunction with this order are highly unusual and unwarranted.
The surplusage included with today's order obviously does not embody the resolution of this case, because by denying the order as moot, the Court has determined that no presently justiciable controversy exists. By definition, a "moot" case is one "which seeks to get a judgment on a pretended controversy when in reality there is none, or to get a decision in advance about a right before it has been actually asserted or contested." People v. Iaconis, 29 Mich.App. 443, 467, 185 N.W.2d 609 (1971). As this Court stated in Sullivan v. Michigan State Bd. of Dentistry, 268 Mich. 427, 429, 256 N.W. 471 (1934), "It is not our duty to pass on moot questions or abstract propositions." When no legitimate case or controversy exists, courts ordinarily refrain from issuing extraneous judicial policy statements. Johnson v. Muskegon Heights, 330 Mich. 631, 633, 48 N.W.2d 194 (1951). The statement provided by the Court today discusses the merits of the case and supplies commentary on the appropriateness of action taken by our federal counterparts. The majority's discussion contravenes the principal reasons for declaring a case moot. I would, again, exercise judicial restraint, and would reserve for another day an in-depth review of the habeas corpus concerns implicated by this case, as any discussion of the manner in which "principles of comity and federalism" relate to appellate process.
MARILYN J. KELLY, J., joins in the statement of MICHAEL F. CAVANAGH, J.
NOTES
[1] Concerning other allegations in the concurring opinion of judicial overreaching by this Court's statement, we merely observe: (1) we do not purport to resolve anything by this order beyond denying plaintiff's motion for clarification; therefore, it is hard to know what to make of his allegation that we are acting in violation of the mootness doctrine; (2) the principal purpose of this statement is to explain to the parties why we are denying the motion; an additional purpose is to explain to the federal district court, which appeared to invite such clarification, why we are denying the motion; and (3) even if characterized as dictum, the statement is dictum that is relevant to the instant motion and, almost certainly, would be relevant in no other circumstance. The concurrence neither cites, nor are we are aware of, any case or legal doctrine which indicates that such dictum is in any way inappropriate.
[2] The trial court vacated the conspiracy conviction. The prosecutor timely appealed that ruling to the Court of Appeals.
[3] Unpublished order, entered January 26, 2000 (Docket No. 224173).
[4] Unpublished order, entered February 10, 2000 (Docket No. 224173).
[5] Although the case was randomly assigned to District Judge Paul V. Gadola, Judge Hood apparently entertained the initial emergency motion in her capacity as presiding judge.
[6] This Court has not reviewed any substantive issues related to defendant's original conviction or the circuit court's decision on defendant's motion for a new trial.
[7] We are unclear regarding what bond the circuit court "reinstated," as the circuit court denied defendant's initial motion for bond pending appeal, and the Court of Appeals order granting defendant bond pending appeal was vacated by this Court. 461 Mich. 966 (2000). We assume that the circuit court's order granted defendant bond pending retrial.
[8] The United States Supreme Court recently stressed the limitations on federal intrusion into state court proceedings through the avenue of habeas corpus proceedings:

Federal habeas corpus principles must inform and shape the historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts. In keeping the delicate balance we have been careful to limit the scope of federal intrusion into state criminal adjudications and to safeguard the States' interest in the integrity of their criminal and collateral proceedings. [Williams v. Taylor, ___ U.S. ___, 120, S.Ct. 1479, 1490, 146 L.Ed.2d 435 (2000).]
[9] The district court expressed its confusion regarding the standard of review employed by this Court, implying either that it believed this Court had applied the wrong standard of review or that this Court had applied the proper standard in an improper fashion. 88 F. Supp. 2d at 777.
[10] This Court may require the lower courts to specify the reasoning and analysis employed in deciding certain issues, in order to facilitate appellate review. However, the district court lacks similar authority to require this Court to specify the reasoning and analysis employed in resolving matters of state law because the district court does not exercise appellate review over the decisions of this Court.
[11] In Arizona v. Washington, 434 U.S. 497, 517, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the United States Supreme Court held that a state court's decision is not subject to collateral attack in a federal court simply because the state court failed to articulate on the record all the factors that informed the deliberate exercise of that court's discretion. In that case, the United States District Court granted the state prisoner's petition for a writ of habeas corpus, and the Ninth Circuit affirmed. The United States Supreme Court granted certiorari and reversed, ruling that where the basis of a state court's ruling is adequately disclosed by the record, "the failure to explain that ruling more completely does not render it constitutionally defective." 434 U.S. at 517, 98 S.Ct. 824. In Arizona, the United States Supreme Court did not examine whether due process principles required an explanation of the state court's ruling. Nevertheless, we believe the case provides reasoning that would have been useful to the district court in the instant case. The district court believed that it would be improper to look at the record in an individual case to discern a rational basis supporting the state court's exercise of discretion. That decision appears contrary to the approach taken by the United States Supreme Court in Arizona, where the Court decided that the state court was not required to recite any particular litany of reasons for its decision because the record provided sufficient justification for the state court's ruling.

Further, the Fourth Circuit has rejected the contention that a state court's denial of bail pending appeal must be accompanied by a statement of reasons in order to withstand collateral attack:
As the clear weight of authority now recognizes, however, this rationale cannot justify a federal court's imposition of a requirement that state courts explain their reasons for denying bail.... [E]stablished principles of comity and federalism preclude such a requirement when the bail decision of a state court is collaterally reviewed. [Jenkins v. Harvey, 634 F.2d 130, 132 (C.A.4, 1980).]
[12] See n. 3.
[13] We acknowledge that Love contained dicta extending its analysis to defendants requesting bond pending appeal. However, this analysis appears to contradict the Sixth Circuit's precedent established in Bloss, which specifically considered postconviction defendants and ruled that such defendants have no constitutional right to bond pending appeal.
[14] The analysis employed by the district court in Love also appears to be inconsistent with the Sixth Circuit's understanding of the requirements for writs of habeas corpus, as expressed in Dennany. Both cases considered a defendant who had been granted a new trial by the state courts, but had been denied bond pending retrial. The district court considered the defendant a pretrial detainee, while the Sixth Circuit considered the defendant a postconviction detainee. The district court found that the defendant had a fundamental liberty interest, while the Sixth Circuit found that the defendant did not even raise a constitutional claim.
[15] The Second Circuit likewise held that a defendant is required to file a habeas corpus proceeding in the state courts in order to exhaust his state remedies. This requirement allows the state courts to consider whether the defendant was denied his constitutional rights by the state court denial of his request for an appeal bond. Finetti v. Harris, 609 F.2d 594 (C.A.2, 1979). See also Brown v. Wilmot, 572 F.2d 404 (C.A.2, 1978), where the Second Circuit declined to consider the defendant's argument that a state court's denial of bond pending appeal without a statement of reasons violated his constitutional rights, because the defendant had failed to pursue state habeas corpus proceedings and therefore failed to exhaust state remedies.
[16] We note that the defendant in Bloss pursued habeas corpus proceedings in the Michigan courts before filing a petition for writ of habeas corpus with the United States District Court.
[17] The defendant's success in obtaining a new trial from the circuit court further demonstrates that defendant had not exhausted his state remedies.