**Joseph Edmund PUERTAS, Petitioner,**

v.

**William OVERTON, Director, Michigan Department of Corrections, Nick Ludwick, Warden, Egeler Reception and Guidance Center, Michael Bouchard, Sheriff, Oakland County, Respondents.**

**No. CIV.A.03–40157.**

United States District Court,
E.D. Michigan,
Southern Division.

July 17, 2003.

---

Elizabeth L. Jacobs, Detroit, Robyn B. Frankel, Bloomfield Hills, for Joseph Edmund Puertas, petitioner.

John S. Pallas, Special Assist. Atty. General, William G. Pierson, Oakland County Corporation Counsel, Pontiac, for William Overton, Director, Michigan Department of Corrections, Nick Ludwick, Warden, Egeler Reception and Guidance Center, Michael Bouchard, Sheriff, Oakland County, respondents.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Petitioner's motion for bond pending review of his petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court shall grant Petitioner's motion for bond.

## I. BACKGROUND

Petitioner Joseph E. Puertas is 76 years old and is currently being treated for bladder cancer and heart disease. He was convicted of six counts of delivery of less than 50 grams of a controlled substance (cocaine) and one count of conducting a criminal enterprise after a jury trial in the State of Michigan Oakland County Circuit Court that concluded on November 1, 1999. On December 2, 1999, Petitioner was sentenced to a two year period of incarceration as to each charge, with each sentence to run consecutively. Thus, Petitioner's total sentence amounted to a minimum of 14 years of incarceration.

At sentencing on December 2, 1999, Petitioner made a motion for an appeal bond. After a brief hearing, the motion was denied by the Oakland County Circuit Court without any explanation. On January 5, 2000, Petitioner filed a motion for bond on appeal with the Michigan Court of Appeals pursuant to Rule 7.209(D) of the Michigan Rules of Court. On January 26, 2000, the Michigan Court of Appeals granted Petitioner's motion for appeal bond, and Petitioner was released on January 27, 2000.

On January 27, 2000, the Oakland County Prosecutor filed an application for leave to appeal and a motion for immediate consideration with the Michigan Supreme Court. On February 9, 2000, the Michigan Supreme Court granted the Prosecutor's motion for immediate consideration, vacated the Michigan Court of Appeals' order granting bond, and remanded the case to that court for reconsideration of Petitioner's motion for bond with instructions to issue an order delineating its rationale for granting or denying bond pursuant to the factors set forth in *People v. Giacalone,* 16 Mich.App. 352, 167 N.W.2d 871 (1969).

On February 10, 2000, the Michigan Court of Appeals granted Petitioner's motion for immediate consideration and issued an order again granting Petitioner's motion for bond with a recitation of the *Giacalone* factors and an explanation of why Petitioner qualified for release on bond pending appeal. On February 11, 2000, the Prosecutor again filed a motion for leave to appeal with the Michigan Supreme Court. On the afternoon of Friday,

March 3, 2000, the Michigan Supreme Court granted immediate consideration and again vacated the Michigan Court of Appeals' order granting bond. The Michigan Supreme Court's per curiam order stated that—contrary to the Michigan Court of Appeals' analysis—Petitioner did not satisfy the criteria for release on appeal bond. The Michigan Supreme Court did not give any explanation for its decision.

Just before the close of business on March 3, 2000, Petitioner filed a petition for a writ of habeas corpus with the United States District Court for the Eastern District of Michigan in Detroit. Petitioner maintained that the Michigan Supreme Court's second order vacating his bond violated due process of law because it was an arbitrary decision that vacated a reasoned decision without explanation for doing so.[1] Petitioner also filed an "Emergency Ex Parte Request for Continuation of Bond Pending Hearing on 2241 Motion." Although this case was randomly assigned to this Court, the Honorable Denise Page Hood, acting as presiding judge, heard Petitioner's motion on March 3, 2000 and entered a temporary restraining order on Saturday, March 4, 2000.

On March 10, 2000, a hearing was held before this Court to determine whether the Court should extend the temporary restraining order. On March 13, 2000, this Court entered an order extending the temporary restraining order an additional 10 days until March 31, 2000. On March 29, 2000, this Court granted Petitioner's motion for preliminary injunction and enjoined Respondents "from taking Petitioner into custody based on the facts surrounding this civil action until this Court rules on Petitioner's application for a writ

of habeas corpus." *See Puertas v. Michigan Dep't of Corr.,* 88 F.Supp.2d 775, 778 (E.D.Mich.2000) (Gadola, J.).

Thereafter, Respondents filed a motion for reconsideration with the Michigan Supreme Court seeking clarification of that court's peremptory order remanding Petitioner to custody and a motion to immediately consider the motion for reconsideration. Respondents apparently sought clarification from the Michigan Supreme Court that would bring its March 3, 2000 Order into conformity with federal due process requirements. On May 8, 2000, the Honorable Colleen O'Brien of the State of Michigan Circuit Court for the County of Oakland entered an opinion and order in which Judge O'Brien concluded that information in a police report that had been withheld from Petitioner violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See People v. Puertas,* Nos. 98–157485, 98–157489, slip. op. at 5–6 (Mich.Cir.Ct. May 8, 2000). As a result, Judge O'Brien set aside Petitioner's conviction, granted Petitioner a new trial, and reinstated Petitioner's bond pending that new trial, *see id.* at 6, thereby rendering Petitioner's habeas corpus action in this Court moot.

On June 20, 2000, after Petitioner's conviction had been set aside by the Michigan Trial Court, the Michigan Supreme Court entered an order granting Respondent's motion for immediate consideration and denying as moot Respondent's motion for reconsideration. *See People v. Puertas,* 462 Mich. 885, 885, 613 N.W.2d 297, 298 (Mich.2000). This Court dissolved its preliminary injunction and denied the petition for a writ of habeas corpus as moot on September 27, 2001. *See Puertas v. Mich.*

---

**1.** It is important to note that, in contrast to the petition presently before the Court, the petition filed in March, 2000 concerned *only* the issue of whether the Michigan Supreme

Court's order vacating Petitioner's state appeal bond violated due process. The petition now before the Court, filed on June 23, 2003, seeks to set aside Petitioner's conviction.

*Dep't of Corr.*, 166 F.Supp.2d 1152, 1154 (E.D.Mich.2001) (Gadola, J.).

On September 27, 2002, the Michigan Court of Appeals reversed the Michigan Trial Court's order granting Petitioner a new trial. *See People v. Puertas*, Nos. 224173, 224286, 2002 WL 31160304, at *1 (Mich.Ct.App. Sept. 27, 2002) (per curiam). Petitioner filed a motion for reconsideration in the Michigan Court of Appeals, and the court denied this motion. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On May 22, 2003, the Michigan Supreme Court denied Petitioner's request for leave to appeal. *See People v. Puertas*, 661 N.W.2d 583 (2003). On June 12, 2003, Petitioner filed a motion for reconsideration in the Michigan Supreme Court, and the Oakland County Prosecutor filed an opposition to the motion on or about June 17, 2003. *The motion for reconsideration remains pending in the Michigan Supreme Court as of the writing of this opinion.*[2]

On June 17, 2003, the Oakland County Prosecutor filed a motion in the Oakland County Circuit Court "to cancel pre-trial bonds, re-issue judgments of sentence pursuant to Court of Appeals opinion, and for immediate execution of sentence." (*See* Pet. Ex. B.) The trial court scheduled Petitioner to appear on Tuesday, June 24, 2003 at 3:30 p.m. for reinstatement of the original conviction and sentence. At that time, Petitioner apparently was to be remanded to the custody of the Michigan Department of Corrections.

On June 23, 2003, Petitioner filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. Petitioner also filed an "emergency ex-parte motion" for bond pending a hearing on his § 2254 petition, and an "emergency ex-parte motion" for a temporary restraining order prohibiting the State of Michigan from imprisoning him prior to a hearing on his request for bond in this Court.

On the afternoon of June 23, 2003, this Court conducted a hearing on Petitioner's motion for a temporary restraining order. Although Petitioner's motions were styled "ex-parte," Petitioner served Respondents with his pleadings, and Respondents were represented at the hearing by the Oakland County Prosecutor's office. After hearing the parties' arguments, the Court granted Petitioner's motion for a temporary restraining order and enjoined the State of Michigan from revoking Petitioner's bond prior to July 2, 2003, at 10:00 a.m. The Court scheduled a further hearing on Petitioner's motion for bond for July 2, 2003 and directed the parties to file supplemental briefs addressing the "in custody" requirement of 28 U.S.C. § 2254(a) and the issue of exhaustion of state remedies. Following the Court's issuance of the temporary restraining order, Petitioner's hearing before the Oakland County Circuit Court was rescheduled for July 8, 2003.

The parties appeared before the Court as scheduled on July 2, 2003 for oral argument on Petitioner's motion for bond. Following the hearing, the Court extended the temporary restraining order for ten days to permit the Court time to issue a formal opinion in this matter while preserving the status quo. Accordingly, the Court enjoined the State of Michigan from taking Petitioner into custody prior to July 17, 2003.

## II. ANALYSIS

There are essentially three issues before the Court. First, the Court must address whether Petitioner is "in custody" for purposes of 28 U.S.C. § 2254. Second, the

---

**2.** On June 25, 2003, the Oakland County Prosecutor declined Petitioner's offer to stipulate to the withdrawal of the Prosecutor's opposition to the motion for reconsideration.

Court must determine whether Petitioner has exhausted his remedies in the Michigan courts, and, if he has not, whether the Court should dismiss the petition for failure to exhaust. Third, if Petitioner satisfies the first two inquiries, the Court must determine whether to grant Petitioner's motion for bond. The Court now turns to these issues.

## A. The "Custody" Requirement of Section 2254(a)

Section 2254 of Title 28, United States Code, provides, in pertinent part, that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Respondent correctly has conceded that Petitioner is "in custody" for purposes of 28 U.S.C. § 2254. (*See* Resp. Br. on Custody and Exhaustion at 2 n.1.) (citing *Hensley v. Mun. Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973)). In *Hensley*, the Supreme Court held "that a person released on bail or on his own recognizance may be 'in custody' within the meaning of [28 U.S.C. § 2254(a)]." 411 U.S. at 349, 93 S.Ct. 1571; *see also Malinovsky v. Court of Common Pleas*, 7 F.3d 1263, 1264 (6th Cir.1993) (noting that

the petitioner was "in custody" for purposes of 28 U.S.C. § 2254 even though he had been released on a personal recognizance bond) (citing *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir.1989) (noting that "custody" for purposes of 28 U.S.C. § 2254 includes "individuals on parole, probation, or bail").

■ Here, the Oakland County Circuit Court reinstated Petitioner's pre-trial bond after granting Petitioner's motion for new trial. Accordingly, under the authority set forth above, Petitioner is "in custody" for purposes of 28 U.S.C. § 2254(a).

## B. Exhaustion of State Court Remedies

■ An applicant seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must first exhaust his remedies in state court before requesting relief in federal court. *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir.2000); *see* 28 U.S.C. § 2254(b).[3] An applicant's failure to exhaust his remedies in state court, however, does not divest a federal court of jurisdiction over the petition. *See id.; O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir.1996). Nevertheless, "there is a strong presumption in favor of requiring the prisoner to pursue his available state remedies." *Granberry v. Greer*, 481 U.S. 129, 131, 107

---

**3.** Section § 2254 of Title 28, United States Code provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus ... shall not be granted unless it appears that -
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

\* \* \* \* \* \*

(c) An applicant shall not be deemed to have exhausted the remedies available in

the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
28 U.S.C. § 2254(b), (c).

S.Ct. 1671, 95 L.Ed.2d 119 (1987). Accordingly, an unexhausted claim should be dismissed except in unusual or exceptional circumstances. *See id.* at 134, 107 S.Ct. 1671; *O'Guinn,* 88 F.3d at 1412. In assessing whether such circumstances exist, federal courts "should determine whether the interests of comity and federalism will be better served by addressing the merits" of the petition or by dismissing the matter in favor of final adjudication by the state court. *Granberry,* 481 U.S. at 134, 107 S.Ct. 1671. When "the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis." *Id.* at 134–35, 107 S.Ct. 1671. "[T]he exception in *Granberry* is fairly narrow and the Supreme Court has been quite clear that exhaustion is the preferred avenue and that exceptions are to be for narrow purposes only." *O'Guinn,* 88 F.3d at 1412.

Despite the pendency of his motion for reconsideration in the Michigan Supreme Court, Petitioner argues that he has satisfied the exhaustion requirement because the Michigan courts have had a full and fair opportunity to review his federal constitutional claims. Moreover, Petitioner contends that, even if this Court concludes that he has not exhausted his remedies in the State courts, exceptional circumstances warrant a waiver of the exhaustion requirement. For reasons set forth below, the Court concludes that Petitioner has not exhausted his remedies in the Michigan courts. However, the Court finds exceptional circumstances in this case that warrant a waiver of the exhaustion requirement.

"The exhaustion requirement is satisfied when a petitioner has 'fairly presented' the substance of each federal claim to the state courts." *Tuggle v. Seabold,* 806 F.2d 87, 91 (6th Cir.1986). Petitioner argues that he satisfied this requirement when the Michigan Supreme Court denied his application for leave to appeal on May 22, 2003. This Court would agree with Petitioner, were it not for the fact that Petitioner subsequently filed a motion for reconsideration in the Michigan Supreme Court, a motion that remains pending. It is worth noting that Petitioner was not obligated to file a motion for reconsideration in the Michigan Supreme Court in order to satisfy the exhaustion requirement. *Id.* at 91 ("Once an issue of asserted constitutional violation has been presented to the State's highest court, the doctrine of exhaustion of remedies does not require future repetitive presentations to such court by additional attempts through a variety of successive motions.") (internal quotation and citation omitted).[4] Nevertheless, now that Petitioner has availed himself of that remedy, he will not have satisfied the exhaustion requirement until the Michigan Supreme Court either grants or denies his motion for reconsideration. *Cf. McClendon v. Sherman,* 329 F.3d 490, 493 (6th Cir.2003) (concluding that, for purposes of the one year statute of limitations for filing habeas corpus actions provided in 28 U.S.C. § 2244(d)(1)(A), a petitioner's "direct review" concludes on the date that the Michigan Supreme Court refuses to reconsider its decision denying leave to appeal).

The parties have speculated as to the likelihood that the Michigan Supreme Court will grant Petitioner's motion for reconsideration. Petitioner's counsel argued at the July 2, 2003 hearing before

---

**4.** Respondent concedes that Petitioner is not required to seek post-conviction relief pursu-ant to Michigan Court Rule 6.500 in order to satisfy the exhaustion requirement.

this Court that in recent years the Michigan Supreme Court has granted roughly one percent of motions for reconsideration. In contrast, Respondents assert that the Michigan Supreme Court "has granted motions for reconsideration with surprising frequency." (*See* Resp. Supp. Br. on Custody and Exhaustion at 3–4 (citing cases)). The Court notes, in addition, that the Oakland County Prosecutor argued in its motion to cancel Petitioner's bond in the Oakland County Circuit Court that, "because Defendant's motion for reconsideration merely presents the same arguments already rejected by [the Michigan Supreme] Court, it cannot be granted." (Pet. Ex. B. at ¶ 8 n.1 (citing M.C.R. 2.119(F)(3)).) While the parties' arguments on this issue may be of interest to an odds maker, the Court finds such prognostication irrelevant, and inappropriate, to its determination of whether the principles of comity and federalism permit a waiver of the exhaustion requirement. Petitioner's motion for reconsideration remains pending in the Michigan Supreme Court, and the Michigan Supreme Court may grant the motion, and then again, it may not. While this Court will not attempt to predict the outcome, the posture of this case in the State court is significant in determining whether to waive the exhaustion requirement. Petitioner has presented his claims to all levels of the Michigan court system, and he is now at the very final stage of that review. It is this fact, coupled with the exceptional circumstances outlined below, that counsels the Court in favor of waiving the exhaustion requirement.

■ Petitioner argues that exceptional circumstances are present in this case because, prior to the Michigan Supreme Court's decision on his motion for reconsideration, he "is facing a lengthy and physically devastating incarceration." (Pet. Supp. Br. at 9.) It is undisputed that Petitioner's motion for reconsideration in the Michigan Supreme Court does not stay the effect of the Michigan Supreme Court's order denying leave to appeal. *See* M.C.R. 7.313(E). Accordingly, the Michigan Court of Appeals' decision reversing the Michigan Trial Court's order granting Petitioner a new trial and reinstating Petitioner's convictions is effective, and Petitioner faces imminent incarceration upon re-issuance of the judgments in the Oakland County Circuit Court. While the imminent incarceration of a convicted felon would rarely constitute an exceptional situation, Petitioner's age, ill health, and dire need for continued medical treatment warrant special consideration in this case.

Petitioner is 76 years old and suffers from severe coronary artery disease and bladder cancer. (*See* Pet. Ex. C, D, & E.) Petitioner's urologist, Dr. Michael Cotant, reports that Petitioner was diagnosed with aggressive bladder cancer on February 6, 2003. (*See* Cotant Aff. at ¶ 3.) Dr. Cotant states that, on February 27, 2003, Petitioner began a course of treatment involving six weeks of Intravesical BCG (Bacillus Calmette–Guerin) Immunotherapy. (*See id.* at ¶ 4.) Petitioner completed his sixth BCG treatment on April 2, 2003, and a biopsy conducted on May 8, 2003 did not identify cancer cells. (*See id.* at ¶ 8.) As a result, Dr. Cotant avers that he has downgraded Petitioner's treatment to monthly BCG treatments with intermittent surgical biopsies. (*See id.* at ¶ 8.) Petitioner began this treatment regimen on June 20, 2003, and is scheduled for BCG treatments on July 18, 2003, August 22, 2003, September 19, 2003, October 17, 2003, and November 21, 2003. (*See id.*) Dr. Cotant has prescribed surgical biopsies for September 5, 2003 and December 5, 2003. (*See id.*) Dr. Cotant avers that Petitioner's recent biopsies do not mean that Petitioner has been "cured" of his cancer and notes that this type of cancer has a recurrence rate of 70–90%. (*See id.* at ¶ 9.) Accordingly, Dr.

Cotant states that it is imperative that Petitioner maintain his present course of treatment and follow-up schedule, adding that Petitioner must be followed closely for the rest of his life. (*See id.*) In closing, Dr. Cotant avers that if Petitioner's condition is not treated properly, or if his current course of treatment is interrupted, Petitioner faces a significant risk that the tumor will return and that his cancer will become advanced, invasive, and untreatable. (*See id.* at ¶ 10.) Moreover, Dr. Cotant notes that failure to treat this disease properly could result in the necessary removal of Petitioner's bladder or in Petitioner's death. (*See id.* at ¶ 11.)

Respondents argue that "the Michigan Department of Corrections *can* address Petitioner's *specific* health concerns." (Resp. Br. on Bond at 8.) Citing a Policy Directive issued by the Michigan Department of Corrections and an affidavit from Valerie Hammond, Health Unit Manager for the Southern Michigan Correctional Facility in Jackson, Michigan, Respondents argue at length that Petitioner can receive appropriate medical care in prison and that prisoners with similar conditions receive regular treatment. (*See* Resp. Br. at 7–10; Resp. Appx. A, B.) Petitioner's counsel attacked Respondent's evidence at the July 2, 2003 hearing in this matter by quoting extensively from the voluminous Findings of Fact and Conclusions of Law issued by the Honorable Richard Alan Enslen of the United States District Court for the Western District of Michigan in *Hadix v. Johnson,* No. 4:92–CV–110 (W.D.Mich. Oct. 29, 2002). The *Hadix* case, originally filed in 1980, concerns, *inter alia,* prisoners' claims of substandard medical conditions at several Michigan Department of Corrections facilities, including the Southern Michigan Correctional Facility at Jackson. *See Hadix,* slip op. at 1–9. In his Findings of Fact and Conclusions of Law, Judge Enslen outlined numerous instances of substandard medical care received by prisoners at the various facilities at issue in the case, and Petitioner's counsel read portions of Judge Enslen's opinion into the record at the July 2, 2003 hearing before this Court. Without recounting the numerous references cited by counsel, the Court finds the following conclusion reached by Judge Enslen to be illustrative:

> Based on the number and severity of incidents, their pervasiveness among the health care outcomes examined, and their serious consequences to patients in need of serious medical treatment, the Court finds that the system of access to health care did not provide reliable and timely access to care for prisoners with urgent and emergent symptoms.... The Court finds that the existing system of access continues to violate provision II.A.4.a of the Consent Decree and continues to violate the Eighth Amendment of the United States Constitution.

*Hadix,* slip op. at 45 ¶ 217.

This conclusion, when viewed in light of the numerous instances of substandard medical care cited by Petitioner's counsel on the record, is sufficient to call into question Respondents' claims that Petitioner's medical needs will be met in prison.[5] Accordingly, in view of Petitioner's age, grave medical condition, and mandatory, life-preserving treatment regimen, the Court finds exceptional circumstances warranting a waiver of the exhaustion requirement so that the Court can reach the

---

5. Even if the Court were to accept the Hammond affidavit at face value, it is of questionable relevance in light of the fact that Respondent has provided no evidence that Petitioner would even be housed at the Southern Michigan Correctional Facility. Nor did Respondent provide any indication as to the amount of time it would take to locate Petitioner at his final destination within the Department of Corrections.

questions presented in the petition and motion for bond.[6]

### C. Bond

■ In order to receive bond pending a decision on a petition for a writ of habeas corpus,

> [a petitioner] must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice. There will be few occasions where a prisoner will meet this standard.

*Lee v. Jabe,* 989 F.2d 869, 871 (6th Cir. 1993) (internal quotation and citations omitted) (second alteration in original). Moreover, "[s]ince a habeas petitioner is appealing a presumptively valid state conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." *Id.* For reasons set forth below, the Court concludes that the present case constitutes "the very unusual case" in which a habeas petitioner is deserving of bond prior to a decision on the merits of the petition.

■ First, the Court finds that Petitioner has presented a substantial claim of law in his petition. Although Petitioner raises four separate claims in his petition, he focuses in his motion for bond on the first issue, which arises under *Brady v. Mary-*

*land,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("hold[ing] that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). As noted above, the Honorable Colleen O'Brien of the Oakland County Circuit Court granted Petitioner's motion for a new trial after finding that the prosecution had violated *Brady* by failing to disclose to Petitioner a report prepared by the Michigan State Police Department. *See People v. Puertas,* Nos. 98–157485, 98–157489, slip. op. at 5–6 (Mich. Cir.Ct. May 8, 2000). The police report had been prepared following "an independent Michigan State Police investigation of allegations of misconduct in [Petitioner's] case brought by" a former Oakland County Sheriff's Department Deputy. *See id.* at 2. Judge O'Brien concluded that, "[i]n viewing the entire report, this Court finds that had the information in the report been previously available to Defendants, there is a reasonable probability that the result of the proceeding would have been different." *Id.* at 5. On appeal, the Michigan Court of Appeals reversed the trial court's grant of a new trial on the *Brady* issue. *See People v. Puertas,* Nos. 224173, 224286, 2002 WL 31160304, at *5 (Mich.Ct.App. Sept. 27, 2002).

Having carefully reviewed the opinions of the State courts issued in this matter, applicable law, and the petition, the Court

---

**6.** Petitioner also argues that the Court should waive the exhaustion requirement pursuant to 28 U.S.C. § 2254(b)(1)(ii), which provides for waiver when "circumstances exist that render such process ineffective to protect the rights of the applicant." This provision does not seem applicable in Petitioner's case. In *Lucas v. Michigan,* 420 F.2d 259 (6th Cir.1970), cited by Petitioner, the Sixth Circuit waived the exhaustion requirement based upon its finding that the state corrective process was

ineffective where the Michigan courts had repeatedly refrained from deciding whether the United States Supreme Court's holding in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) superceded a provision of the Michigan Constitution. *Id.* at 261. Here, Petitioner is not claiming, as was the case in *Lucas,* that the Michigan courts repeatedly have misapplied federal law in some way that renders the State appeals process *ineffective.*

is convinced that Petitioner has presented a substantial claim of law based on the facts surrounding the petition. The Court notes that Petitioner's showing on this issue is bolstered significantly by the fact that the trial court found his *Brady* claim meritorious and granted him a new trial. Accordingly, Petitioner has satisfied the first element of the bond inquiry.

 For the reasons already set forth in relation to exhaustion, the Court also finds that Petitioner has demonstrated the existence of circumstances making his motion for bond exceptional and deserving of special treatment in the interests of justice. Clearly, Petitioner's dire health condition merits such a finding. Therefore, the Court finds that Petitioner has satisfied the second element of the bond inquiry.[7]

## III. CONCLUSION

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Petitioner's motion for bond pending review of his petition filed pursuant to 28 U.S.C. § 2254 is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner shall remain free on bond during the pendency of this action under the same terms and conditions set forth in Petitioner's State court bond. On or before Monday, July 21, 2003, the parties shall submit to the Court a proposed stipulated order containing the terms and conditions of Petitioner's bond.

**SO ORDERED.**

---

7. Although risk if flight and danger to the community are not specifically noted as factors to be considered in granting bond pending review of a federal habeas petition, the Court notes that there has been no suggestion that Petitioner is either a risk of flight or a danger to the community.